STATE OF MAINE
CUMBERLAND, ss.

BUSINESS & CONSUMER COURT
CIVIL ACTION
DOCKET NO. BCD-CIV-2022-00038

IDEXX Laboratories, Inc.,                )
                                          )
                    Plaintiff,            )
                                          )
                                          )
        v.                                )          ORDER ON DEFENDANT'S
                                          )          MOTION TO DISMISS UNDER
                                          )          M.R. CIV. P. 12(b)(6)
                                          )
                                          )
Melissa LaPointe,                         )
                                          )
                    Defendant.            )

## INTRODUCTION

In this matter, Plaintiff IDEXX Laboratories, Inc. ("Plaintiff") seeks to enforce its Non-Compete Agreement against Defendant Melissa LaPointe ("Defendant") and prays for monetary damages for Defendant's purported violation of the Agreement as well as any further or additional relief the court deems just and proper. Before the court is Defendant's Motion to Dismiss Plaintiff's Complaint under Maine Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Defendant's motion is denied.

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of the complaint and does not probe the merits of the underlying case." *Carey v. Bd. of Overseers of the Bar*, 2018 ME 119, ¶ 19, 192 A.3d 589 (internal quotation marks omitted). In reviewing a motion to dismiss, courts must "consider the facts in the complaint as if they were admitted." *Bonney v. Stephens Mem. Hosp.*, 2011 ME 46, ¶ 16, 17 A.3d 123 (citing *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902

1

A.2d 830). The complaint is viewed "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* (quotation marks omitted). "Dismissal is warranted when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that [they] might prove in support of [their] claim." *Id.* (quotation marks omitted).

## FACTUAL ALLEGATIONS

Plaintiff is a Delaware corporation with its principal place of business in Westbrook, Maine. Plaintiff conducts business in the veterinary industry developing, manufacturing, and distributing products and services for the companion animal veterinary, livestock and poultry, water testing, and dairy sectors. Plaintiff's research and development pipeline is a key component of its business, and it spends considerable time and resources researching and identifying the needs of a sector, developing and understanding it, and then developing products and services to meet those needs. Plaintiff's point-of-care hematology tests helped make it a leader in its industry. Antech Diagnostics ("Antech") is one of Plaintiff's principal industry competitors.

Defendant is an individual residing in Hollis, Maine. She was employed by Plaintiff from July 2004 through February 2022, when she resigned. Defendant worked in various roles for Plaintiff during her term of employment. Most recently, Defendant was Product Manager on Plaintiff's product line of point-of-care hematology and coagulation instruments (the "Product Line"). As Product Manager, Defendant gained a deep understanding of the Product Line, including how best to market the products to veterinarians. Also, in this role Defendant had access to confidential and proprietary information regarding Plaintiff's internal product strategy, product design and functionality, marketing strategy, and development plans for the Product Line.

2

As a condition of Defendant's employment by Plaintiff, Defendant executed a Non-Compete Agreement on July 6, 2004 (the "Agreement"). The Agreement provides, in relevant part, that for a period of two years after Defendant voluntarily terminated her employment with Plaintiff, Defendant would not:

(a) Engage (whether for compensation or without compensation) as an individual proprietor, partner, stockholder, officer, employee, director, joint venturer, investor, lender, or in any other capacity whatsoever (otherwise than as the holder of not more than one percent (1%) of the total outstanding stock of a publicly held company), in any business enterprise which competes with the [Plaintiff] in any business area in which the [Plaintiff] is engaged, including, but not limited to, the animal and agricultural diagnostic field and the food and environmental testing field; or

(b) Recruit or otherwise solicit or induce any employee of the [Plaintiff] to terminate their employment with, or otherwise cease a relationship with, the [Plainiff].

Plaintiff alleges that it recently learned Antech plans to develop point-of-care products, including a hematology solution, that would compete with Plaintiff's existing products. After her resignation from employment with Plaintiff, Defendant accepted a job with Antech.

## DISCUSSION

Courts will enforce a noncompete agreement only to the extent the agreement is reasonable, in that it "sweep[s] no wider than necessary to protect the business interest in issue," *Chapman & Drake v. Harrington*, 545 A.2d 645, 647 (Me. 1988), and does not impose an undue hardship on the employee, *Sisters of Charity Health Sys., Inc. v. Farrago*, 2011 ME 62, ¶ 10, 21 A.3d 110 (citation omitted). Protection of the employer from business competition alone "is not a legitimate business interest to be advanced" by a non-compete agreement. *Chapman & Drake*, 545 A.2d at 647. Hence, even though "[w]hether a noncompetition agreement is reasonable is a question of law to be determined by the court," the reasonableness of the agreement "must ultimately be

3

determined by the facts developed in each case as to its duration, geographic area and the interests sought to be protected." *Id.* This requires case-by-case analysis wherein courts assess the reasonableness of a noncompete agreement only as a party seeks to apply it, "and not as it might have been enforced on its plain terms." *Id.*; *Everett J. Prescott, Inc. v. Ross*, 390 F. Supp. 2d 44, 47 (D. Me. 2005). However, a court must not redraft the parties' agreement by enforcing only those provisions the court deems reasonable. *Ross*, 390 F. Supp. 2d at 47.

I.      The breadth of the Agreement's plain terms is not fatal to Plaintiff's Complaint.

Defendant argues that Plaintiff's claim that she breached the Agreement must be dismissed because the Agreement is overly broad and therefore unreasonable as a matter of law and unenforceable. Specifically, Defendant asserts the limitless geographic restriction renders the Agreement overly broad, and that the Agreement's application to "any business area" in which Plaintiff is engaged imposes an undue hardship on Defendant.

On its face, the Agreement applies for a duration of two years after Defendant's termination of their employment for Plaintiff, without geographic limitation, and to "any business enterprise which competes with the [Plaintiff] in any business area in which the [Plaintiff] is engaged." These parameters are broadly stated. However, absence of a narrowed geographic limitation or any reference to geography is not *per se* unreasonable. *See Securadyne Sys., LLC v. Green*, No. 2:13-CV-387-DBH, 2014 WL 1334184 (D. Me. Apr. 2, 2014) (citing *Chapman & Drake*, 545 A.2d at 648). At this stage, the court cannot tell either whether the agreement is overly broad or whether Plaintiff's enforcement of the Agreement is reasonable. More facts are needed in this case to make that determination.

4

II.     Plaintiff's Complaint alleges sufficient facts that, if proved, would support the court's finding the Agreement's enforcement is reasonable in this case.

Defendant argues that, even if the Agreement is not unreasonable as a matter of law, Plaintiff's Complaint must be dismissed because its allegations (1) fail to demonstrate a legitimate business interest is being protected by barring Defendant from working in any way for Antech, and (2) amount to no more than mere labels and conclusions with no facts pled to support the claim that Defendant actually violated the Agreement.

Notably, the Complaint alleges that Antech is one of Plaintiff's principal competitors, Antech is developing point-of-care products that would compete with Plaintiff's Product Line, and that the Product Line helped make Plaintiff an industry-leader. The Complaint further alleges that Plaintiff's research and development activity "is a key component of its business," Defendant developed a deep understanding of the Product Line through her work for Plaintiff, and that Defendant had access to confidential and proprietary information (qualified by Plaintiff as "Hematology Trade Secrets") about the Product Line. Finally, the Complaint alleges that Defendant executed the Agreement as an employee of Plaintiff's, and that Defendant left Plaintiff's company for employment with Antech.

Taking these alleged facts together and viewing them in the light most favorable to Plaintiff, the Complaint adequately demonstrates a legitimate business interest protected by enforcement of the Agreement against Defendant—protection of sensitive information regarding the Product Line that may be in Defendant's possession and valuable to Antech. Additionally, direct competition in the point-of-care sector between Plaintiff and Antech is subsumed within these allegations. Thus, it is not dispositive that the Complaint does not allege that Defendant is working for Antech on its point-of-care hematology product team or in a role substantially similar to the one she worked in when she was employed by Plaintiff. At this early stage of the proceeding,

5

it is enough for Plaintiff to claim that Defendant possessed and had access to sensitive information regarding the Product Line that is likely valuable to Antech, and that Defendant left Plaintiff's employment to work for Antech. That is, it cannot be said beyond doubt that Plaintiff is entitled to no relief under any set of facts it might prove in support of its claim.

CONCLUSION

Based on the foregoing, the entry will be: Defendant Melissa LaPointe's Motion to Dismiss is DENIED.[1]

SO ORDERED.

The Clerk is requested to enter this Order on the Docket, incorporating it by reference pursuant to Maine Rule of Civil Procedure 79(a).

Date: 10/3/22

Justice Thomas McKeon
Business & Consumer Court

Entered on the docket: 10/03/2022

---

[1] The stay ordered on September 14 is lifted. The parties are to submit an agreed Case Management Order in the form provided by the court or, in the alternative, request a conference with the court.

*IDEXX LABORTORIES, INC.*

     *Plaintiff*

*v.*

*MELISSA LAPOINTE*

     *Defendants*


Party Name:                             Attorney Name:

*IDEXX LABORATORIES, INC*          Robert Brooks, Esq.
**Verril Dana LLP**
One Portland Square
PO Box 586
Portland, ME 04112-5086


Melissa Lapointe                     Matthew Morgan, Esq.
**McKee Law, LLC PA**
133 State Street
Augusta, ME 04330