STATE OF MAINE
CUMBERLAND, ss.

BUSINESS AND CONSUMER COURT
DOCKET NO. BCD-CV-2019-00021

RICHARD P. OLSON, Trustee of
the Promenade Trust,

           Plaintiff

           v.

PAMELA GLEICHMAN, et al.,

           Defendants

)
)
)
)
)
)
)
)
)
)

**ORDER GRANTING
PLAINTIFF'S MOTION
TO STRIKE JURY DEMAND**

Before the Court is Plaintiff's Motion to Strike Jury Demand on the grounds that the claims in question primarily seek equitable remedies. For the following reasons, the Court grants Plaintiff's Motion.

**Background**

The claims before the Court include Plaintiff's Amended Complaint and Defendant Hancock's Counterclaim against Plaintiff and Cross-Claim against Defendant General Holdings. Plaintiff's Amended Complaint alleges fraudulent transfer as to Defendants Gleichman and Hancock.[1] Plaintiff Richard Olson alleges that he is trustee of the Promenade Trust, which holds several judgments against Defendant Gleichman. He further asserts that while owing over 11 million dollars to the Promenade Trust and while she was insolvent within the meaning of 14 M.R.S. § 3573, Defendant Gleichman made transfers of several partnership interests to Defendant Ellen Hancock in violation of 14 M.R.S. §§ 3575 and 3576, Maine's fraudulent

---

[1] Plaintiff's claim against Defendant General Holdings was resolved in the Court's Order on Summary Judgment issued 7/7/2021.

1

transfer statutes. Plaintiff requests relief including voiding the allegedly fraudulent transfers, a provisional remedy against the asset transferred or other property, enjoining further dispositions by Defendants, and damages not to exceed double the value of property transferred.

Defendant Ellen Hancock's counts, as to both Plaintiff and Defendant General Holdings, include unjust enrichment, conversion, breach of fiduciary duties and aiding and abetting, breach of contract, and a request for an accounting. According to Hancock, General Holdings, under agreement as general partner of several housing projects, has been required to pay certain assets to two trusts for which she serves as trustee and to the Promenade Trust, for which Plaintiff serves as trustee. Hancock alleges that General Holdings has improperly paid sums to the Promenade Trust and that the Promenade Trust retained those assets which were rightfully owed to her trusts. As relief, she requests damages, an accounting, costs and attorney fees, and dismissal of the Amended Complaint.

**Legal Standard**

The Maine Constitution grants parties the right to trial by jury "[i]n all civil suits, and in all controversies concerning property ... except in cases where it has heretofore been otherwise practiced ...." Me. Const. art. I, § 20. The Law Court has construed that provision to provide the right "unless it is affirmatively shown that a jury trial was unavailable in such a case in 1820." *North School Congregate Housing v. Merrithew*, 558 A.2d 1189, 1190 (Me. 1989). In 1820, legal claims in Maine were entitled to jury trials, while equitable claims were not. *See DesMarais v. Desjardins*, 664 A.2d 840, 844 (Me. 1994). To determine whether a claim is legal or equitable, the Law Court has instructed "appraisal of the basic nature of the issue presented, including the relief sought." *Id.* at 1016. "Where a plaintiff seeks damages as full compensation

2

for an injury, the claim is legal and the plaintiff is entitled to a jury trial. On the other hand, when the primary recovery pursued is equitable, the inclusion of a request for money damages does not convert the proceeding into an action at law." *Id.* at 844 (citation omitted).

**Analysis**

*Plaintiff's Complaint*

Plaintiff argues that no jury right is available because his claims primarily seek equitable relief, with the "thrust of Plaintiff's action [being] to 'avoid' the purported transfer either because it was a juridical nullity as never legally effectuated or because, if a transfer occurred at all, it violated Maine's fraudulent transfer statute." Plaintiff's Motion to Strike at 1.

Defendants reply that Plaintiff has not carried his burden to show that there is no right to jury trial, that historically fraudulent transfer claims were not exclusively heard in equity, that Plaintiff's claims seek legal relief and have factual elements requiring a jury's factfinding, and that the issue of what relief is primarily sought is irrelevant.

To succeed on his Motion, Plaintiff must prove that his fraudulent transfer action would have been tried to a court of equity in 1820. The Court finds that Plaintiff has carried this burden. Defendant is incorrect that the primary remedy sought is irrelevant; Plaintiff may meet his burden by showing the primary recovery he requests is equitable. *See DesMarais*, 664 A.2d at 844. The right to a jury trial is not so broad that it applies to ancillary legal claims in suits at equity. *Id.*

Both parties cite to a Superior Court opinion, *WCP Me. Loan Holdings, LLC v. Norberg*, 2019 Me. Super. LEXIS 4 (Jan. 16, 2019), addressing a similar issue. This Court finds that case persuasive. In that case, the Superior Court (Hancock County, *R. Murray, J.*) held that a

3

fraudulent transfer claim seeking equitable relief and damages did not carry a jury trial right under the Maine Constitution. Defendants in the case at hand make a similar argument to that made in *Norberg*. They point to cases involving fraudulent transfer claims heard by juries in Maine in an attempt to show that juries have historically been available for fraudulent transfer cases. As addressed in *Norberg*, the fraudulent transfer claims in those cases were ancillary to claims at law, which did afford the jury right. When fraudulent transfer claims seeking equitable relief constituted the primary concern in a case, the case was heard in equity without a jury.[2]

In *Norberg*, the Superior Court found that the primary issues were whether the transfer should be voided, whether Defendants should be enjoined from further transfers, and whether a receiver should be appointed to oversee the property, 2019 Me. Super. LEXIS 4, at *12. It held these were equitable issues. Similarly, the issues in Plaintiff's Amended Complaint are whether the transfers should be voided, whether a provisional remedy should be granted against the transferred property, and whether the Defendants should be enjoined from further transfers. The Court finds these issues to be equitable.

---

[2] *Compare Ricker v. Ham*, 14 Mass. 137 (1817) (jury trial where primary claim was trespass at law), *and Blake v. Howard*, 11 Me. 202 (1834) (jury trial where primary claim was trespass at law), *and Whitehouse v. Bolster*, 95 Me. 458, 50 A. 240 (1901) (jury trial where primary claim was for writ of entry at law), *and Blanchard v. Baker*, 8 Me. 253 (1832) (jury trial where primary claim was trespass at law), *and Eastman v. Fletcher*, 45 Me. 302 (1858) (jury trial where primary claim was for writ of entry at law), *with Stover v. Poole*, 67 Me. 217 (1877) (action in equity to remove cloud on title due to a fraudulent deed), *and Dana v. Haskell*, 41 Me. 25 (1856) (fraudulent transfer claim seeking return of property heard in equity), *and Whitmore v. Woodward*, 28 Me. 392 (1848) (fraudulent transfer claim seeking compelled conveyance of property heard in equity), *and Traip v. Gould*, 15 Me. 82 (1838) (fraudulent transfer claim seeking compelled conveyance of property heard in equity).

Defendants also cite to *Huber v. Williams*, 2005 Me 40, 869 A.2d 737 as an example of a modern case in which a jury heard a fraudulent transfer case seeking equitable relief. The Superior Court considered this argument in *Norberg*:

> The Court does not find this case to be helpful in the current context because there is no discussion in the Law Court decision regarding the constitutional right to a jury trial in fraudulent transfer cases. As noted above, for equitable claims, "an advisory jury or trial by consent is available," *Cyr v. Cote*, 396 A.2d 1013, 1016, and it is not clear whether either of those options were used in *Huber*.

2019 Me. Super. LEXIS 4, at *11 n.9. This Court finds the reasoning quoted above compelling and finds that it addresses Defendants' argument in the instant case.

4

Defendants rely on the request for damages and the existing factual issues in claiming that a jury right exists. The Court finds that Plaintiff's damages request is not of primary concern here, *see DesMarais*, 664 A.2d at 844, and factual issues do not convert an equitable case to a legal one. Therefore, the Court finds Plaintiff's claims carry no right to a jury trial.

*Defendant Hancock's Counterclaim and Cross-Claim*

Plaintiff argues in the Reply Memorandum that Defendant Hancock's claims are primarily for a partnership accounting, "an inherently equitable proceeding without a jury." At 5-6. Defendants assert that a jury trial is available because the claims seek legal relief including damages. The Court finds that Plaintiff has shown that a jury trial would not have been available for an action like Hancock's in 1820.

Hancock's claims are both legal and equitable, but the Court finds that the legal claims – conversion and breach of contract – arise from the partnerships between General Holdings and Hancock as trustee. On their face, Hancock's claims belie both a fiduciary and a contractual relationship between Hancock and General Holdings. A deeper analysis shows that all the claims are based in partnership. Hancock's Exhibit A shows four Assignment and Assumption Agreements, in which Hancock as trustee appears to enter a partnership relationship with General Holdings (formerly known as Gleichman & Company, Inc.). These documents make no reference to General Holdings's duty to pay into a trust. Hancock asserts this duty comes from the partnership agreements. Counterclaim and Cross-Claim at ¶ 41.

No exception to the rule that partners may not maintain an action at law for damages against other partners until there has been a settlement or accounting of partnership affairs applies here. *See Dalton v. Austin*, 432 A.2d 774, 777-78 (Me. 1981). Moreover, breach of a

5

partnership agreement is not generally an action at law. 59A Am. Jur. 2d Partnership §§ 351, 390 (1987). Hancock's claims assert that General Holdings diverted funds for Hancock's trusts to the Promenade Trust in breach of its partnership duties. The damages request seeks to recover the amount wrongfully transferred to the Promenade Trust.

In sum, the legal elements of Hancock's claims all rely on an accounting and assessment of partnership duties. An accounting seeks "equitable relief against a person in a fiduciary relationship to recover profits taken in breach of the relationship." *Oceanic Inn, Inc. v. Sloan's Cove, LLC*, 2016 ME 34, ¶ 38, 133 A.3d 1021. Although the evidence does not suggest Plaintiff is in a partnership with Hancock – only that General Holdings is – Hancock's primary concerns surround the partnership accounting. Thus, the primary issue sounds in equity, and the claims do not carry a jury right.

**Conclusion**

The Court concludes that Plaintiff has shown that both his own and Hancock's claims are primarily equitable. The Court hereby grants Plaintiff's Motion to Strike.

The entry shall be:

Plaintiff's Motion to Strike Jury Demand is GRANTED.

The clerk is directed to incorporate this order in the docket by reference pursuant to M.R. Civ. P. 79(a).

February 10, 2022

_____

M. Michaela Murphy
Justice, Me. Bus. & Consumer Court

6Entered on the docket: 02/10/2022

STATE OF MAINE                                   BUSINESS AND CONSUMER COURT
CUMBERLAND, ss                                   BCD-CV-19-21


RICHARD OLSON, Trustee of
The Promenade Trust,

      Plaintiff

v.                                               **ORDER ON MOTION FOR SUMMARY**
                                                 **JUDGMENTS FOR COUNTS I, II AND IV**

PAMELA GLEICHMAN,
GENERAL HOLDINGS, INC. and
ELLEN HANCOCK, TRUSTEE of
HILLMAN NORBERG TRUST,

      Defendants


Before the Court is a Motion for Summary Judgment brought by Defendants Pamela Gleichman and Ellen Hancock as Trustee of the Hillman Norberg Trust on Counts I, II and IV of the Complaint brought against them and Defendant General Holdings, Inc.. Plaintiff is represented by Attorney Gerald F. Petruccelli, and Defendants are represented by Attorney John S. Campbell.

Count I of the Amended Complaint alleges that in violation of 14 M.R.S.A. Section 3575 Defendant Gleichman fraudulently transferred several parcels of real estate to Defendant Ellen Hancock as Trustee of two trusts with the intent to hinder, delay or defraud Gleichman's creditors; or were made without receiving reasonably equivalent value in exchange for the transfers; or that Gleichman was engaged in a business transaction for which her remaining assets were unreasonably small in relation to the business or transaction; or she intended to incur

1

or reasonably believed she would incur debts beyond her ability to pay as those debts became due.

Count II of the Amended Complaint alleges that in violation of 14 M.R.S.A. Section 3576 Defendant Gleichman fraudulently transferred several parcels of real estate to Defendant Ellen Hancock as Trustee of two trusts when at the time Plaintiff was the holder of claims that Gleichman had accrued before the transfers were made, that Gleichman did not receive a reasonably equivalent value in exchange for the transfers, and that Gleichman was insolvent at the time of the transfers or as a result of the transfers.

Count IV of the Amended Complaint alleges that Defendant General Holdings fraudulently transferred several parcels of real estate to Defendant Ellen Hancock as Trustee of two trust when at the time Plaintiff was the holder of claims that Gleichman had accrued before the transfers were made, that General Holdings did not receive a reasonably equivalent value in exchange for the transfers, and that General Holdings was insolvent at the time of the transfers or as a result of the transfers.

## UNDISPUTED FACTS

On October 23, 2012, Defendant Pamela Gleichman ("Gleichman") established the Hillman Norberg Trust for the benefit of Hillman Norberg. Def. S.M.F. ¶ 5. This trust was created for the purpose of refinancing the family's summer home located in Bar Harbor, Maine. The Trust was obligated to make payments from trust rental income on a "mortgage loan" being obtained from Bank of America. Def. S.M.F. ¶ 6. Gleichman transferred her General Partnership interests in three Maine apartment properties ("the Three Maine Projects") into the Trust upon its creation. Def. S.M.F. ¶ 2.

As of October 23, 2012, Karl Norberg, husband of Defendant Gleichman and serving as Trustee of the Promenade Trust, was the holder of certain claims against Gleichman. Def. S.M.F. ¶ 9. In 2013 Norberg transferred the claims he had against his wife to an earlier trustee of the Promenade Trust, Chris Coggeshall. Def. S.M.F. ¶ 10. Plaintiff Olson eventually became the Trustee of the Promenade Trust, and as successor to Mr. Coggeshall, has claimed a right to the claims against Gleichman previously held by Mr. Coggeshall as Trustee. Pl.'s S.M.F. ¶ 11. Plaintiff Olson contends that the transfer of Gleichman's General Partnership assets was done with the intent to hinder, delay, or defraud her creditors, one of which is Olson. For this reason, Olson asks the Court to avoid the transfer, and grant him damages as well as other equitable remedies. Plaintiff filed his Complaint on October 22, 2018 in Cumberland County Superior Court.

## STANDARD OF REVIEW

Summary judgment is appropriate if, based on the parties' statements of material fact and the cited record, there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. M.R. Civ. P. 56(c); *Levine v. R.B.K. Caly Corp.,* 2001 ME 77, ¶ 4, 770 A.2d 653. A genuine issue of material fact exists when a fact-finder must choose between competing versions of the truth, even if one party's version appears more credible or persuasive. *Id.* A fact is material if it has the potential to affect the outcome of the suit. *Id.* To survive a defendant's motion for summary judgment, the plaintiff must establish a prima facie case for every element of the plaintiff's cause of action. *Oceanic Inn, Inc., v. Sloan's Cove, LLC, 2016 ME 34,* ¶ 26, 133 A.3d 1021. "When a plaintiff has the burden of proof on an issue, a court may properly grant summary judgment in favor of the defendant if it is clear that the defendant would be entitled to a judgment as a matter of law if the plaintiff presented nothing more than was before the court"

when the motion was decided. *Reliance Nat'l Indem. v. Knowles Indus. Servs., Corp.,* 2005 ME 29, ¶ 9, 868 A.2d 220.

## DISCUSSION

### I.  Whether Plaintiff has Established a Prima Facie Case of Fraudulent Transfer According to 14 M.R.S.A. §§ 3575, 3576 is a Dispute of Material Fact.

Counts I, II, and IV of the Plaintiff's Amended Complaint allege that Defendant Gleichman fraudulently transferred several parcels of real estate to Defendant Ellen Hancock as Trustee of two trusts, in violation of 14 M.R.S.A. §§ 3575, and 3576.[1] Gleichman contends that the facts are undisputed and Plaintiff cannot establish a prima facie case of a fraudulent transfer. In support of her assertion, Gleichman claims that the transfers were carried out openly and transparently, for the purpose of refinancing her property. Additionally, Gleichman argues that Plaintiff lacks standing to contest the transfers at issue. For these reasons, Gleichman moves for summary judgment. However, Gleichman's arguments are unpersuasive.

According to Section 3575(1), a transfer made or obligation incurred by a debtor is fraudulent as to present and future creditors, if the debtor made the transfer or incurred the obligation:

A.  With actual intent to hinder, delay, or defraud any creditor of the debtor; or
B.  Without receiving a reasonably equivalent value in exchange for the transfer or obligations and the debtor:
   (1) Was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business transaction; or
   (2) Intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as the debts became due.

---

[1] In her motion for summary judgment, Gleichman makes the same arguments for dismissal of both Counts I and II. Because her arguments are the same on both counts, the Court addresses them together.

14 M.R.S.A. § 3575(1).[2]

As illustrated above, 14 M.R.S.A § 3575(1)(A) describes a transfer or obligation as fraudulent if made or incurred with actual intent to delay or defraud the debtor's present and future creditors.[3] Gleichman first asserts that Plaintiff is unable to establish a prima facie case of fraudulent transfer. However, as Plaintiff has pointed out, Gleichman's actions create an inference of an intentional plan to hinder and delay her creditors.

According to 14 M.R.S.A. § 3575(2), the Court is required to consider a variety of factors in determining whether a debtor had actual intent to engage in a fraudulent transfer. The factors are whether:

> (A) The transfer or obligation was to an insider; (B) the debtor retained possession or control of the property transferred after the transfer; (C) the transfer or obligation was disclosed or concealed; . . . (I) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; or (J) The transfer occurred shortly after a substantial debt was incurred. . ."

14 M.R.S.A § 3575(2). Plaintiff alleges multiple facts that correspond with the above factors, as well as with Subsection B of 14 M.R.S.A. § 3575(1).

First, Plaintiff contends that because the transfer was made to the Trust for the benefit of Hillman Norberg, the transfer was to an insider. In any case, Plaintiff asserts, whether or not the transfer was to an insider, the ultimate beneficial owner of the general partnerships assets is the transferor's son Hillman Norberg. Second, Gleichman apparently has made plans, as demonstrated in her Answer and affidavit, to use the transfers at issue in connection with other

---

[2] Likewise, 14 M.R.S.A. § 3576 considers a transfer fraudulent when it is made without receipt of reasonably equivalent value, or is made to an insider for an antecedent debt while the debtor was insolvent and the insider had reasonable cause to believe the debtor was insolvent. Plaintiff asserts, and the Court agrees, that neither Gleichman's motion or supporting documents provide any evidence that she received fair consideration for the transfers.

5

financing schemes. Gleichman Aff. ¶ 6; Ans. ¶ 41-42. To that end, Plaintiff contends that plans to use the transferred property indicate Gleichman's retention of control of the property, and that further discovery is likely to support this claim. Further, Plaintiff asserts that Gleichman continued to receive reports of her limited partnership interests in various entities, including the three subject to this litigation, and that the certified records of the Maine Secretary of State indicate that Gleichman remained a general partner in all three of the partnerships at issue, despite allegedly transferring her interest in them. Third, Plaintiff asserts that Gleichman has failed to provide any evidence that she provided notice of the transfer to taxing authorities, the management company, or any regulatory agencies, thus keeping it a secret. Pl.'s S.M.F. ¶ 9.  The fourth and final factor enumerated in Section 3575(2) that Gleichman's behavior allegedly satisfies is (I); Plaintiff believes the Court must presume Gleichman is insolvent.

It is undisputed that Gleichman made a transfer of assets to the Hillman Norberg Trust. Plaintiff alleges the above facts that, when viewed in relation to the factors listed in 14 M.R.S.A. § 3575(2), create a dispute of material fact as to whether this transfer was done with the intent to hinder, delay, or defraud Gleichman's creditors. Thus, on these facts alone, the Court cannot dispose of Count I of Plaintiff's Complaint.

Nonetheless, in further defense of the transfers at issue, Gleichman states that she was solvent at the time they were made. Conversely, Plaintiff contends the Court should instead presume Gleichman insolvent. 14 M.R.S.A. § 3573(2) presumes a debtor insolvent when they are not paying their debts as they become due. The Court notes the various instances in pleadings where Gleichman references significant debts, many apparently unpaid. For instance, paragraphs 36 and 37 of the counterclaim portion of Gleichman's Answer describe various debts to be cured by a bankruptcy plan, presented to creditors in Chicago. Gleichman Ans. ¶¶ 36-37.  Further,

Gleichman herself states that the transfers at issue were aimed at preventing foreclosure on her Bar Harbor home, while attempting to pay off multiple debts. Gleichman Ans. ¶¶ 41- 46; Gleichman Aff. ¶ 6. The Court recognizes Gleichman might possibly be able to demonstrate that her 2012 assets had sufficient value to exceed her 2012 liabilities. Critically, however, the Summary Judgment record contains no such evidence of value. In addition to the previously described, though disputed, indicia of actual intent to defraud her creditors, Gleichman's insolvency is both material and in dispute. Thus, the Court denies Gleichman's motion for summary judgment on Counts I, II, and IV at this stage.4

## II. Whether Plaintiff Lacks Standing to Challenge the Transfer of Her Partnership Interests to the Hillman Norberg Trust.

The final argument Gleichman makes in support of her motion is that Plaintiff lacks standing to challenge the transfers at issue in this case. Defendant asserts that in October, 2012, the time of the transfer at issue, Karl Norberg held the claims against Gleichman that are being used to support standing in this case, and was aware of Gleichman transferring her partnership interests to the Hillman Norberg Trust. Mr. Coggeshall, acting as Trustee of the Promenade Trust, received those claims in 2013, but according to Gleichman, Mr. Coggeshall had only acquired the claims for the purpose of protecting Gleichman against her creditors. Gleichman argues that Plaintiff, as successor Trustee, does not stand in the shoes of the original creditor, and may not bring a claim under the UFTA, particularly when Norberg, in his role as Trustee, knew of and consented to the transfers at the time they occurred. Gleichman has failed to cite sufficient

4 Count IV of Plaintiff's complaint alleges that Defendant General Holdings engaged in a fraudulent transfer alongside Gleichman in her individual capacity. Defendant's motion for summary judgment does not differentiate their arguments between Counts, or Defendants. For this reason, the Court addresses the arguments as they were made, and declines to enter judgment in favor of the Defendants on Count IV for the same reasons it denies the motion on Counts I and II.

authority in support of her contention, and at this stage the Court declines to find a lack of standing on this basis.

Additionally, Plaintiff has asserted that, on information and belief, before October 2012, Gleichman and Karl Norberg had borrowed significant sums of money from the Promenade Trust itself with the assent of Mr. Coggeshall and therefore that both Gleichman and Norberg were indebted to Mr. Coggeshall in his capacity as Trustee at the time of the establishment of the Hillman Norberg Trust. Olson, as successor Trustee argues that he acquired a claim to that debt. Because the parties dispute the nature of this debt, Gleichman's motion for summary judgment is denied as to Counts I, II, and IV on the basis of standing.

## CONCLUSION

For the reasons set forth above, the Court denies Defendant Gleichman's Motion for Summary Judgment in its entirety.

The Clerk is instructed to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).

So Ordered.

**Dated**:__June 5, 2020_____                    ____/S_____
                                                      **Justice M. Michaela Murphy**
                                                      **Business and Consumer Court**

8

STATE OF MAINE                           BUSINESS & COUNSUMER DOCKET
CUMBERLAND, ss.                          DOCKET NO. BCD-CV-19-21


RICHARD P. OLSON, in his capacity as    )
TRUSTEE OF THE PROMENADE                )
TRUST,                                   )
                                         )
                                         )    **ORDER ON PLAINTIFF/**
          Plaintiff,                     )    **COUNTERCLAIM DEFENDANT'S**
                                         )    **MOTION TO DISMISS**
     v.                                  )    **COUNTERCLAIM**
                                         )
PAMELA GLEICHMAN, et al.,                )
                                         )
          Defendant.                     )

Pending before the Court is Plaintiff/ Counterclaim Defendant Richard P. Olson's motion

to dismiss the eighty-four page, seventeen-count, three-hundred-one paragraph Counterclaim filed

by Defendant/ Counterclaim Plaintiff Pamela Gleichman and Counterclaim Plaintiff Karl Norberg.

Ms. Gleichman and Mr. Norberg oppose the motion. The Court heard oral argument on the motion

on May 29, 2019.[1] Gerald Petrucelli, Esq. represented Mr. Olson and John Campbell, Esq.

represented Ms. Gleichman.

## BACKGROUND

This case is one of several currently pending in the Business Court involving Ms.

Gleichman and her husband, Mr. Norberg, and the companies and trusts they have set up over the

years. The Complaint in this particular action—BCD-CV-19-21—was brought by Mr. Olson in

his capacity as Trustee of the Promenade Trust (or the "Trust") against Ms. Gleichman and Ellen

Hancock, trustee to two different trusts, as well as General Holdings, Inc. ("GH"), a Maine

corporation that Ms. Gleichman apparently exercises some control over or which is otherwise

---

[1] After oral argument the Court took the motion under advisement. This matter, along with several associated cases involving these and other parties, was scheduled for a judicial settlement conference on July 10-11, 2019. To conserve judicial resources the Court withheld decision on the motion in light of the conference. The parties were unable to reach an agreement at the settlement conference and the Court thus now enters this Order.

implicated in fraudulent transfers allegedly orchestrated by Ms. Gleichman. (*See generally* Pl.'s Compl.) The gist of the Complaint is that Ms. Gleichman, Ms. Hancock, and GH were involved in a scheme to fraudulently transfer Ms. Gleichman and GH's assets into two trusts for which Ms. Hancock is the Trustee—*viz.* Hillman Norberg Trust ("HNT") and Hillman Mather Adams Norberg Trust ("HMANT")—and out of the reach of the Promenade Trust, which includes among its assets multimillion-dollar judgments against Ms. Gleichman and GH. (Pl's Compl. ¶¶ 8-13, 16-24.) These transfers are allegedly voidable as fraudulent pursuant to statute. *See* 14 M.R.S. §§ 3571-3582. (Pl's Compl. ¶¶ 26-39.)

Ms. Gleichman answered and counterclaimed. *See* M.R. Civ. P. 7(a), 8(a). In her lengthy Counterclaim, she alleges essentially that the Promenade Trust—particularly under predecessor Trustee Chris Coggeshall—was once on her side but has since "flipped" to the side of her perennial adversary and daughter Rosa Scarcelli and from 2015 has engaged in tortious and illegal behavior that is inconsistent with her understanding of how the Trust would (and should) be administered. The factual allegations begin in 1999 and run through to the present day. (Def.'s Countercl. ¶¶ 18-178.)

## STANDARD OF REVIEW

In reviewing a motion to dismiss under Rule 12(b)(6), courts "consider the facts in the [pleading] as if they were admitted." *Bonney v. Stephens Mem. Hosp.*, 2011 ME 46, ¶ 16, 17 A.3d 123. The complaint is viewed "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* (quoting *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830). "Dismissal is warranted when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that he might prove in support of his claim." *Id.* "The legal sufficiency of a

2

[pleading] challenged pursuant to M.R. Civ. P. 12(b)(6) is a question of law" and thus subject to *de novo* appellate review. *Marshall v. Town of Dexter*, 2015 ME 135, ¶ 2, 125 A.3d 1141.

DISCUSSION

Mr. Olson first raises an argument which is dispositive of the entire pleading and grounded not in M.R. Civ. P. 12(b)(6) but rather Rule 8(a)(1), which requires that any "pleading which sets forth a claim for relief," including a counterclaim, consist of "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." *See also* M.R. Civ. P. 8(e). It is not unusual for a defending party to complain that a lengthy pleading falls short of the aspirational mandate of Rule 8(a)(1). Mr. Olson confirmed at the oral argument that he is not merely complaining, but suggesting that the Court could in its discretion dismiss the Counterclaim for not conforming to the Rule. Such dismissal would presumably be without prejudice and with leave to amend. *Cf.* 2 Harvey & Merritt, *Maine Civil Practice* § 9:2 at 384 (3d, 2011 ed.) (dismissal for failure to comply with requirements of Rule 9(b) "presumably with leave to amend"). Ms. Gleichman responded that notwithstanding the text of Rule 8(a)(1) some cases are more complex than others, and that the Counterclaim describes an exceedingly complex factual situation requiring eighty-four pages and over three-hundred paragraphs of allegations.

Mr. Olson cited no cases in support of such a dismissal, and the Court could not find Law Court precedent explicitly authorizing dismissal under Rule 8. *See St. Hilaire v. Edwards*, 581 A.2d 806, 807 n.1 (Me. 1990) (declining to affirm dismissal under Rule 8 where Rule 12(b)(6) grounds were sufficient). The Court thus declines to dismiss the Counterclaim on Rule 8 grounds.

Next, Mr. Olson argues that he is entitled to dismissal in his personal capacity because all the wrongful actions he is alleged to have undertaken in the Counterclaim were performed in his capacity as Trustee, and not as an individual. Ms. Gleichman responds that under *Me. Shipyard &*

*Marine Ry. v. Lilley*, 2000 ME 9, 743 A.2d 1264, a trustee may be liable in both his personal and representative capacity where he is proved to have participated in the wrong. However, *Maine Shipyard* is completely distinguishable. There, the defendant trust was deliberately not disclosed to the plaintiff in an attempt to avoid paying for services requested by and actually performed for the defendant individual. *Id.* ¶¶ 2, 11. Furthermore, in that case the trustees and beneficiaries were the same two people. *Id.* ¶ 2. Here, Ms. Gleichman alleges essentially that Mr. Olson has taken actions *as trustee* that are not to her liking and allegedly illegal or wrongful. The only personal benefit to Mr. Olson is the fee he is paid out of the Trust assets—a fee he would be paid regardless of whether he managed the Trust in a manner Ms. Gleichman would approve of. *Cf. In re Estate of Stowell*, 595 A.2d 1022, 1025 (Me. 1991) (trustee required to impart full knowledge and obtain the voluntary consent of *beneficiaries* before engaging in any transaction that inures t*o the trustee's benefit*). In sum, there are no allegations that implicate Mr. Olson in his personal capacity, and contrary to Ms. Gleichman's characterization of the case, *Maine Shipyard* does not extend liability to the trustee personally where he is alleged to have acted only in his representative capacity. Mr. Olson as an individual is dismissed from this lawsuit with prejudice.

Relatedly, Mr. Olson points out that the Counterclaim's factual allegation far precede his appointment as Trustee in 2014, and argues that he cannot be held accountable for any actions undertaken by his predecessor. Ms. Gleichman again relies on *Maine Shipyard*, this time for the proposition that a trust is a legal entity akin to a corporation or limited liability company that can be sued as such, and that the actions of a predecessor trustee can be attributed to his successor.

At the outset, *Maine Shipyard*'s holding is much narrower than Ms. Gleichman's characterization. There was no suit brought against the defendant trust as such; the caption of the case clearly identifies the relevant defendants as "DANIEL G. LILLEY and ANNETTE P.

4

LILLEY, TRUSTEES OF THE LILLEY TRUST." The trial court in that case crafted an equitable remedy based on the jury's finding that the individual defendant attempted to use an undisclosed trust as a shield from personal liability for an obligation that the individual defendant incurred personally. *Me. Shipyard & Marine Ry.*, 2000 ME 9, ¶¶ 11, 14-16, 743 A.2d 1264. There are no analogous allegations against Mr. Olson in the Counterclaim. Again, Ms. Gleichman's problems with Mr. Olson are exclusively with regard to actions he has taken as Trustee.

Furthermore, Ms. Gleichman's Counterclaim does not even seek to hold Mr. Olson *liable* for actions undertaken by his predecessor—rather it seeks to *bind* him to promises or arrangements between his predecessor and Ms. Gleichman. This "understanding" between Mr. Coggeshall and Ms. Gleichman may have been in Ms. Gleichman's interest—indeed, allegations to that effect pervade the Counterclaim—but Mr. Olson, as successor Trustee, has presumably determined that whatever arrangements Ms. Gleichman had with Mr. Coggeshall were not in the best interest of the trust beneficiaries. There are no allegations that they were. (*But see* Def.'s Countercl. ¶ 97 (alleging that Mr. Coggeshall believed that his agreement with Ms. Gleichman and Mr. Norberg was the only way to protect assets from Ms. Scarcelli).)

Mr. Olson argues that the entire Counterclaim is based on enforcing an improper arrangement that gave Ms. Gleichman and Mr. Norberg control over the Trust and Ms. Gleichman protection from multimillion-dollar judgments against her personally. Indeed, the Counterclaim specifically alleges that this was the true purpose of the Trust. (*See, e.g.*, Def.'s Countercl. ¶¶ 60-66, 68, 72, 96, 129.) This brings the Court to its final, and most basic, grounds for granting the instant motion—while Ms. Gleichman and Mr. Norberg may be the settlors of the Promenade Trust, there are no allegations that they are its beneficiaries. (Def.'s Countercl. ¶ 6; *see also* Def.'s Countercl. ¶¶ 164-166 (identifying Hillman Norberg and Luigi Scarcelli as Trust beneficiaries).)

As Mr. Olson puts it succinctly in his reply memorandum, "[T]he limit of the standing of a settlor of an irrevocable trust is to seek removal of the trustee under limited circumstances not remotely consistent with the allegations of this Counterclaim. 18-B M.R.S. § 706; *see also* 18-B M.R.S. §§ 1001-1011." (Pl.'s Reply Br. 2 (citations corrected).) As lengthy and confusing as it is, the Counterclaim's basic premise is that Mr. Olson has not managed the Promenade Trust with a view to the best interests of Ms. Gleichman and, to a lesser extent, Mr. Norberg, and that Mr. Olson can be sued for that, notwithstanding the fact that neither Counterclaim Plaintiff is a beneficiary of the irrevocable Trust.[2] That basic premise fails as a matter of law: "A trustee shall administer the trust *solely* in the in the interests of the beneficiaries." 18-B M.R.S. § 802 (emphasis added). The beneficiaries have not joined in this Counterclaim; allegations that the beneficiaries disapprove of Mr. Olson's actions do not confer standing onto these Counterclaim Plaintiffs. (*See, e.g.*, Def's Countercl. ¶¶ 127, 151.) If the beneficiaries have an actionable claim against Mr. Olson based on his handling of the Trust, then they are the proper plaintiffs. *See* 18-B M.R.S. §§ 1001-1011. Neither Ms. Gleichman nor Mr. Norberg state a legally cognizable claim against Mr. Olson in the Counterclaim.

CONCLUSION

Based on the foregoing it is hereby ORDERED:

That Richard Olson's motion to dismiss the Counterclaim is GRANTED. Ms. Gleichman and Mr. Norberg's Counterclaim is dismissed with prejudice.

---

[2] Remarkably, Ms. Gleichman and Mr. Norberg allege multiple times that the Trust itself—as an entity—owed them fiduciary duties. (*See* Def.'s Countercl. ¶¶ 18, 66, 103, 124, 159.) This allegation is a legal conclusion, not a factual allegation, but moreover, it is a faulty legal conclusion that the Court need not and does not accept as true. *See Seacoast Hangar Condo. II Ass'n v. Martel*, 2001 ME 112, ¶ 16, 775 A.2d 1166. Even if considered an entity in legal shorthand, a trust cannot owe fiduciary duties to anyone, and a trustee's duty of loyalty is to the beneficiaries *exclusively* pursuant to statute. *See* 18-B M.R.S. § 802.

The Clerk is requested to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).

Dated:  July 17, 2019                            _____/s_____

M. Michaela Murphy
Justice, Business and Consumer Court